UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JORGE CORTEZ-RUIZ,<br><br>Defendant. | Case No. 15-CR-00114-LHK<br><br>**ORDER GRANTING MOTION TO DISMISS INDICTMENT**<br><br>Re: Dkt. No. 23 |

Defendant Jorge Cortez-Ruiz ("Defendant") filed a Motion to Dismiss Indictment Due to Unlawful Deportation on September 13, 2016. ECF No. 23 ("Mot."). In the motion, Defendant seeks to dismiss his indictment for illegal reentry on the ground that the deportation on which the indictment for illegal reentry was based was invalid. On October 11, 2016, the Government filed an Opposition to Defendant's motion. ECF No. 26. ("Opp."). On October 21, 2016, Defendant filed a Reply to the Government's Opposition. ECF No. 29 ("Reply"). On November 9, 2016, the Court held a hearing on Defendant's motion and ordered supplemental briefing. The Government filed a supplemental brief on November 11, 2016. ECF No. 31. Defendant filed a response on November 15, 2016. ECF No. 32. The Government filed a Notice of Errata to its supplemental brief on November 15, 2016, ECF No. 33. The parties argued the motion further at the November 30, 2016 status conference.

For the reasons described below, Defendant's motion to dismiss the indictment is

GRANTED.

## I.  BACKGROUND

Defendant entered the United States from Mexico to join his parents in 1998, when he was eleven or twelve years old. Declaration of Jorge Cortez-Ruiz ("Cortez-Ruiz Decl."), Exhibit A, ¶ 1. When Defendant entered the United States, he was not admitted or paroled after inspection. *See* Notice of Intent to Issue a Final Administrative Removal Order ("Notice of Intent"), Exhibit G, at 1.  In November 2007, when Defendant was 18 years old, Defendant was arrested in Reno, Nevada on a charge of burglary. Information, Exhibit C, at 1. In January 2008, Defendant pleaded guilty to burglary in violation of Nevada Revised Statute § 202.060 and was convicted. Judgment, ECF No. 23-1 at 12. Defendant was sentenced to 12–30 months in prison, but the sentence was suspended in favor of up to 24 months of probation. *Id.*

In November 2007, soon after his arrest for burglary, Defendant was interviewed by immigration officers. Cortez-Ruiz Decl. at 2. At some point after that interview, Defendant was placed in administrative removal proceedings for having committed an "aggravated felony." Notice of Intent at 2. In January 2008, after Defendant's conviction, Defendant was taken to an immigration facility. Cortez-Ruiz Decl. at 2. On January 7, 2008, an immigration officer issued a "Notice of Intent to Issue a Final Administrative Removal Order" ("Notice of Intent"), which stated that Defendant was "deportable under . . . 8 U.S.C. [§] 1227(a)(2)(A)(iii), as amended, because [he] ha[d] been convicted of an aggravated felony as defined in . . . 8 U.S.C. [§] 1101(a)(43)(G)." Notice of Intent at 1. The Notice of Intent also stated that because of Defendant's conviction for an aggravated felony, Defendant was "amenable to administrative removal proceedings" under 8 U.S.C. § 1228(b) and would be deported "without a hearing before an Immigration Judge." *Id.*

Two hours later on the same day, January 9, 2008, an immigration official signed a "Final Administrative Removal Order" ("Final Order"). This Final Order stated that because Defendant had been convicted of an aggravated felony, Defendant was "ineligible for any relief from removal that the Secretary of Homeland Security may grant in an exercise of discretion." Defendant was

1  then removed to Mexico three days later on January 12, 2008. Warrant of Removal, Exhibit 1.

2  In January 2015, Defendant was found in Santa Cruz, California, after having reentered
3  the United States without permission. Defendant was then subsequently indicted in the instant
4  case for illegal reentry in violation of 8 U.S.C. § 1326.

## II. LEGAL STANDARD

### A. Motion to Dismiss an Indictment

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss an indictment on the ground that the indictment "fail[s] to state an offense." In considering a motion to dismiss an indictment, a court must accept the allegations in the indictment as true and "analyz[e] whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Id.* A motion to dismiss an indictment can be determined before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.1986), *cert. denied*, 478 U.S. 1007 (1986).

### B. Collateral Attack on a Deportation

"For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government must establish that the defendant left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (internal quotation marks and citation omitted). "A defendant charged under § 1326 has a due process right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *Id.* (internal quotation marks and citation omitted).

To demonstrate that a prior deportation cannot serve as the basis of an indictment for illegal reentry, a defendant "must demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings 'improperly deprived [him] of the opportunity for judicial review'; and (3) the removal order was 'fundamentally unfair.'" *Raya-Vaca*, 771 F.3d at 1201 (quoting 8 U.S.C. § 1326(d)) (brackets in

3

original). "To satisfy the third prong – that the order was fundamentally unfair – the defendant bears the burden of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice." *Id.* (internal quotation marks, citation, and brackets omitted).

## III. DISCUSSION

Defendant argues that his 2008 deportation cannot serve as the predicate for an illegal reentry indictment because the deportation was based on an immigration officer's erroneous determination that Defendant had committed an aggravated felony. The Court first considers whether the immigration official's determination that Defendant had committed an aggravated felony was erroneous and concludes that it was. Next, the Court considers whether the immigration official's erroneous determination that Defendant committed an aggravated felony is sufficient for Defendant to mount a successful collateral attack on the deportation underlying his indictment for illegal reentry.

### A. Whether Immigration Officials Properly Determined that Nevada Burglary is an Aggravated Felony

Defendant argues that Nevada burglary, NEV. REV. STAT. § 205.060(1), the crime of which Defendant was convicted, is not an aggravated felony for the purposes of 8 U.S.C. § 1227(a)(2)(A)(iii), which states that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." The term "aggravated felony" is defined in 8 U.S.C. § 1101(a)(43) to mean, as relevant here, the following:

(F) a crime of violence (as defined in section 16 of Title 18, but not including a

purely political offense) for which the term of imprisonment [is] at least one year;

(G) a theft offense (including receipt of stolen property) or burglary offense for

which the term of imprisonment [is] at least one year."

A "crime of violence" is in turn defined in 18 U.S.C. § 16 as the following:

"(a) an offense that has as an element the use, attempted use, or threatened use of

physical force against the person or property of another, or

4
Case No. 15-CR-00114-LHK
ORDER GRANTING MOTION TO DISMISS INDICTMENT

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

The Government concedes that Defendant's conviction for Nevada burglary does not qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43)(G), the "generic crime" test. *See* Opp. at 3 ("Defendant argues at length that his conviction under NRS § 205.060 does not qualify as a theft or burglary aggravated felony under 8 U.S.C. § 1101(a)(43)(G). For purposes of this motion, the government assumes that Defendant is correct on this point."). The Government also concedes that Nevada burglary is not a crime of violence under § 16(a), the "use of force" test. Opp. at 4 ("On its face, [Nevada burglary] does not explicitly require as an element the use of force."). Instead, the Government argues that Nevada burglary qualifies as an aggravated felony because it is a crime of violence under § 16(b), the "residual clause."

Defendant responds to the Government's argument in two ways. First, Defendant argues that the Government cannot rely on § 1101(a)(43)(F), which incorporates § 16(b), because the Notice of Intent and Final Order in Defendant's deportation mentioned only § 1101(a)(43)(G) as a basis for finding that Defendant had committed an aggravated felony. Second, Defendant argues that even if the Government can rely on § 1101(a)(43)(F), Nevada burglary does not qualify as an aggravated felony under that section. The Court addresses these arguments in turn.

**1. Whether the Government Can Rely on § 1101(a)(43)(F)**

Defendant argues that the Government cannot rely on § 1101(a)(43)(F) in arguing that Defendant was convicted of an aggravated felony because during Defendant's deportation proceedings, immigration officials never relied on that basis for finding that Defendant had committed an aggravated felony. Instead, the Notice of Intent stated only that Defendant had committed an aggravated felony "as defined in . . . 8 U.S.C. § 1101(a)(43)(G)." Notice of Intent at 1.[1] The Court therefore considers whether the Government can rely on § 1101(a)(43)(F) even

---

[1] The Notice of Intent in the instant case was a fillable form, which originally contained the printed words "as defined in . . . 8 U.S.C. § 1101(a)(43)( )," leaving the last set of parentheses

5

though that subsection was not mentioned in the Notice of Intent.

### i. A Removal Order Cannot Be Sustained on a Ground Not Charged in the Notice of Intent or Notice to Appear[2]

The Ninth Circuit has held that a court cannot sustain a removal decision "on a ground never charged by the [INS] or found by the [Immigration Judge ("IJ")]." *Al Mutarreb v. Holder*, 561 F.3d 1023, 1029 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)); *see also Cardoso-Tlaseca v. Gonzales*, 460 F.3d 1102, 1107 (9th Cir. 2006) (holding that an alien's prior "possession conviction cannot sustain the removal order because it was not alleged in the [Notice to Appear]").

In *Al Mutarreb*, the Ninth Circuit considered an appeal of a removal order and found that "the evidence in the record could not possibly have established Al Mutarreb's removability as charged in the [Notice to Appear]." *Id.* at 1029. However, the government in *Al Mutarreb* had made "what is essentially a harmless error argument, suggesting that even if the charge as written in the [Notice to Appear] cannot be sustained on appeal, we should nevertheless affirm the removal order on [the] alternative ground" that Al Mutarreb was not lawfully in the United States at the time of his deportation. *Id.* The Ninth Circuit rejected this argument, noting that "[w]hatever the grounds on which Al Mutarreb might have been found removable, only one was charged." The Ninth Circuit held that the Court could not "affirm the administrative action by substituting what it considers to be a more adequate and proper basis." *Id.* (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

The Ninth Circuit followed similar reasoning in *Chowdhury v. INS*, 249 F.3d 970 (9th Cir. 2001). In *Chowdhury*, an alien appealed his removal and argued that his conviction for money

---

blank. Notice of Intent at 1. The immigration official who filled out the form filled in the letter "G" by hand. *Id.*

[2] A Notice of Intent is the equivalent of a Notice to Appear when an alien is subject to expedited removal. *See* 8 U.S.C. § 1238 (providing for "expedited removal of aggravated felons"). Like the Notice to Appear, the "Notice of Intent . . . constitute[s] the charging document" in an expedited removal and "[r]emoval proceedings under section 238(b) of the Act [authorizing expedited removal] . . . commence upon personal service of the Notice of Intent upon the alien." 8 U.S.C. § 1238.1(b)(2)(i); *see also* 8 U.S.C. § 1238.1(a) (providing that any officer who is "authorized to use notices to appear" may issue a Notice of Intent).

laundering was not an aggravated felony under 8 U.S.C. § 1101(a)(43)(D). *Id.* at 970. The Ninth Circuit agreed. *Id.* at 973. In vacating the alien's removal, the Ninth Circuit rejected the Government's argument that even if the alien's money laundering conviction did not qualify as an aggravated felony, the alien was nevertheless removable because he had a conspiracy conviction that qualified as an aggravated felony, and this aggravated felony therefore "provide[d] an independent basis for affirming the" removal. *Id.* at 974. The Ninth Circuit held that the alien's "conspiracy conviction was not specified in the Notice to Appear, and cannot serve as an independent basis for affirming" the removal. *Id.* at 975. In doing so, the Ninth Circuit noted that the alien "d[id] not have notice of the alternative grounds for removal" and therefore "did not have the benefit of a hearing . . . on the [alternative] grounds for removal." *Id.* Thus, as *Chowdhury* indicates, the principle that a removal order can be justified only on a charged ground arises from an alien's right to notice and an opportunity to be heard on the grounds for which the alien is deported.

The Sixth Circuit concurs with the Ninth Circuit. In *Matovski v. Gonzales*, 492 F.3d 722 (6th Cir. 2007), the Sixth Circuit held that an alien has a due process right to have notice of the reasons for which the alien is being deported before the alien is deported, and therefore "due process requires that a Notice to Appear contain all grounds for removability." *Id.* at 738; *see also Al Mutarreb*, 561 F.3d at 1029 (noting the "serious due process concerns that would arise if we were to affirm a removal order on a ground introduced only on appeal and not raised or litigated below.").

The Government seeks to distinguish *Chowdhury* and other cases on the ground that these cases involved direct appeals of removal orders rather than collateral attacks on those orders. However, at least two other courts in the Ninth Circuit have held that relying on uncharged grounds to justify removal is improper even in the context of a collateral attack. In *United States v. Nahun-Torres*, 2013 WL 140047, at *11 (N.D. Cal. Jan. 10, 2013), the court cited *Al Mutarreb* and held that in a collateral attack, "[t]o turn back time now and allow the government to justify the 2007 removal on grounds not charged in the [Notice to Appear] . . . would raise . . . due

7

process concerns." Moreover, in addition to raising due process concerns, the court held that considering an uncharged ground would also frustrate Congress's purpose in requiring a Notice to Appear, "which provides mandatory information about the nature of the proceedings, the legal authority under which the proceedings are conducted, the acts or conduct alleged to be in violation of law, and other critical details." *Id.*

Similarly, in *United States v. Dominguez*, 2013 WL 2237786 (C.D. Cal. Mar 20, 2013), the court found that even in the context of a collateral attack, the court could not sustain the underlying conviction based on the fact that the alien "could have been lawfully deported on other grounds" than the grounds referenced in the Notice to Appear." *Id.* at *4; *see also United States v. Leon-Paz*, 340 F.3d 1003, 1005 n.2 (9th Cir. 2003) (in the context of a collateral attack, disregarding alternative grounds on which the defendant could have been removed when no attempt was made to deport the defendant on those grounds).

The Court finds these cases persuasive. The concerns that the Ninth Circuit recognized in *Al Mutarreb* and *Chowdhury* are just as present in a collateral attack as they are in a direct appeal. The fact that the validity of a removal order arises in the context of a collateral attack does not change the fact that a defendant "did not have the benefit of a hearing" to address uncharged grounds as required by the due process clause. *Chowdhury*, 249 F.3d at 975. Additionally, the Government offers no reason why the concerns present in a direct appeal would not be equally present in a collateral attack. Thus, the Court finds that even on collateral attack, a removal order cannot be justified by a ground for removal of which an alien lacked notice.

Therefore, the Court next considers whether the Court may consider § 1101(a)(43)(F) without violating the principle that a court may not sustain a removal order on a ground of which an alien lacked notice.

### ii. The Government's Distinction Between Grounds for Deportation and "Classifications" of Grounds for Deportation

As the Government concedes, the Notice of Intent in Defendant's deportation proceedings gave notice only that Defendant had committed an aggravated felony under § 1101(a)(43)(G). The

8

Case No. 15-CR-00114-LHK
ORDER GRANTING MOTION TO DISMISS INDICTMENT

Notice of Intent did not mention § 1101(a)(43)(F) to justify the conclusion that Defendant had committed an aggravated felony.

The Government nevertheless argues that it can rely on § 1101(a)(43)(F) even though that section was not mentioned in the Notice because "[t]he government's theory deviates from the stated basis for Defendant's removal only as to the *classification* of Defendant's conviction." United States' Supplemental Memorandum of Law ("Supp. Mem."), ECF No. 31, at 2. In other words, the Government argues that § 1101(a)(43)(F) is not a different *ground* for deportation than § 1101(a)(43)(G). Instead, § 1101(a)(43)(F) and § 1101(a)(43)(G) are simply two ways of classifying *the same ground* for deportation: Defendant's conviction for Nevada burglary. Thus, according to the Government, "all that is required under the law" is that "Defendant was on notice in 2008 that he was removable because of his burglary conviction," regardless of whether that burglary conviction is classified as an aggravated felony under § 1101(a)(43)(G) or § 1101(a)(43)(F). Supp. Mem. at 2.

Arguably, there is some support in the caselaw for the Government's distinction between different *grounds* for a deportation order and different *ways of classifying* the same ground. For example, in *Briseno v. INS*, 192 F.3d 1320 (9th Cir. 1999), the Ninth Circuit held that it could consider an uncharged section of § 1101(a)(43) in determining whether the Ninth Circuit had jurisdiction over an alien's appeal of an order of the Board of Immigration Appeals. Although *Briseno* addressed a jurisdiction-stripping statutory provision that was in effect for six months and therefore is not binding precedent on the issue in the instant case, the principles discussed in *Briseno* do support the Government's argument.

Additionally, in *United States v. Alvarado-Pineda*, 774 F.3d 1198, 1201 (9th Cir. 2014), the Ninth Circuit found that an alien's removal was valid because the alien had committed an aggravated felony under § 1101(a)(43)(G) even though the Notice of Intent appears to have mentioned only § 1101(a)(43)(F). *Id.* at 1203; *see also United States v. Alvarado-Pineda*, 2012 WL 4433283, at *1 (S.D. Cal. 2012) (discussing the contents of the Notice of Intent). *Alvarado-Pineda* is not binding precedent on the question whether a Court can rely on an uncharged section

9

Case No. 15-CR-00114-LHK
ORDER GRANTING MOTION TO DISMISS INDICTMENT

of § 1101(a)(43), because that question was not raised or briefed, and the Ninth Circuit did not address it. Nevertheless, in *Alvarado-Pineda* the Ninth Circuit did do what the Government asks this Court to do: sustain a deportation order based on a section of § 1101(a)(43) that was not charged in the alien's Notice. Furthermore, at least one district court, in *United States v. Bernal-Sanchez*, 2016 WL 727070 (S.D. Cal. Feb. 24, 2016), has relied on *Alvarado-Pineda* to hold that a court can rely on uncharged sections of § 1101(a)(43) to sustain a deportation order. Thus, *Alvarado-Pineda* and *Bernal-Sanchez* suggest that as long as an alien has notice that the alien is being deported for having committed an aggravated felony, the alien need not have notice of the applicable subsection of § 1101(a)(43).

Nevertheless, although *Alvarado-Pineda* and *Bernal-Sanchez* support the Government's argument, the Ninth Circuit's decision in *United States v. Martinez*, 786 F.3d 1227 (9th Cir. 2015), undermines the Government's argument. As discussed further below, in *Martinez*, the Ninth Circuit held that an alien's earlier removal order was invalid because the Immigration Judge ("IJ") had incorrectly determined that the defendant's child molestation conviction qualified as an aggravated felony. The Ninth Circuit acknowledged that the alien's child molestation conviction may also have qualified as "child abuse," which would also have rendered the alien deportable. *Id.* at 1233. However, the Ninth Circuit did not reach this issue because "[t]he Notice To Appear . . . charged Martinez as removable only because he had committed an aggravated felony . . . ." *Martinez*, 786 F.3d at 1233 n.2. Thus, unlike in *Alvarado-Pineda,* in *Martinez*, the Ninth Circuit refused to sustain a removal order on an uncharged "classification" of the same conviction.

In short, it is unclear whether the Government's proposed distinction between uncharged "grounds" and uncharged "classifications" is proper under Ninth Circuit law. However, as discussed below, even considering § 1101(a)(43)(F), the Court finds that Defendant's conviction does not qualify as an aggravated felony under that subsection. Therefore, for purposes of this motion, the Court assumes that the Government is correct that the Court may rely on § 1101(a)(43)(F) to find that Defendant's Nevada burglary conviction qualified as an aggravated felony.

**2. Whether Nevada Burglary is a Crime of Violence Under § 1101(a)(43)(F)**

The Court next considers whether Defendant's conviction for Nevada burglary qualifies as an aggravated felony under § 1101(a)(43)(F), which incorporates 18 U.S.C. § 16(a) and 18 U.S.C. § 16(b). The Government concedes that Nevada burglary is not an aggravated felony under § 16(a), the use of force clause. Therefore, the only remaining question is whether Nevada burglary is an aggravated felony under § 16(b), the residual clause. For the reasons discussed below, the Court concludes that it is not.

In *Johnson v. United States*, 135 S. Ct. 2551 (2015), the United States Supreme Court held in an 8-1 ruling that the residual clause in the Armed Career Criminal Act, which defined a "violent felony" as any felony that "involves conduct that presents a serious potential risk of physical injury to another," was void for vagueness. *Id.* at 2558. The United States Supreme Court held that the residual clause violated due process because "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." *Id.* at 2558.

In *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), the Ninth Circuit applied the United States Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), to hold that 18 U.S.C. § 16(b), which defines "crime of violence" to include any felony that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," was void for vagueness. Specifically, the Ninth Circuit in *Dimaya* held that like the provision addressed in *Johnson*, § 16(b) "produces more unpredictability and arbitrariness than the Due Process Clause tolerates by combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony." *Dimaya*, 803 F.3d at 1120 (quoting *Johnson*, 135 S. Ct. at 2558).

The Government concedes that under *Dimaya*, if Defendant were arrested for Nevada burglary today, that crime would not qualify as a crime of violence under § 16(b). Opp. at 8 ("Had *Dimaya* been decided before Defendant was removed from the United States in 2008, that case

11
Case No. 15-CR-00114-LHK
ORDER GRANTING MOTION TO DISMISS INDICTMENT

might have rendered Defendant eligible for the relief he references in his motion to dismiss"). Thus, if the Court can take into account developments in the law since the time of Defendant's deportation, under *Dimaya* Defendant's Nevada burglary conviction cannot be considered a conviction for a crime of violence under § 16(b). Therefore, the Court must determine whether it can take into account developments in the law since the time of Defendant's 2008 deportation.

### i. Whether the Court May Take Subsequent Legal Developments Into Account

The Government argues that *Dimaya* is not applicable because the Court cannot take into account developments in the law since Defendant's 2008 deportation, but instead must apply the law as it existed at the time of the deportation. Under *United States v. Aguilera-Rios*, 769 F.3d 626 (9th Cir. 2014), a court may take subsequent legal developments into account only if those developments show that an alien is not removable, and not merely if those subsequent developments show that the alien was erroneously not informed of his or her eligibility for certain forms of discretionary relief from deportation. *See id.* at 631 ("This case concerns not the duty to *inform* the noncitizen of his eligibility for *relief* in a removal proceeding, but whether he was removable at all."). This distinction is based on the fact that "the denial of an opportunity to apply for . . . discretionary relief . . . does not implicate the propriety of a removal in the same fundamental a [sic] way as does an [immigration judge's] legal determination that a noncitizen is removable on the basis of precedent we now know to have been erroneous." *Id.* at 633. In other words, under *Aguilera-Rios*, a Court may take subsequent legal developments into account if those developments show that an alien should not have been removed at all, but a court may not take those developments into account if those developments show only that there were procedural defects in the removal order.[3]

---

[3] *United States v. Vidal-Mendoza*, 705 F.3d 1012 (9th Cir. 2013), on which the Government relies, is distinguishable on precisely this basis. In *Vidal-Mendoza*, the defendant "appeared before an immigration judge (IJ) and conceded that he was removable for being present in the United States without having been admitted or paroled." *Id.* Subsequently, as part of the defendant's deportation proceedings, "[t]he IJ told Vidal-Mendoza that, because the [rape] conviction constituted an aggravated felony, he was not entitled to any relief from removal, including voluntary departure." *Id.* at 1013–14. In other words, in *Vidal-Mendoza*, the defendant's deportation was not based on

12

The Government argues that *Dimaya* does not show that Defendant was "not removable" because in 2008, "Defendant was not lawfully present in the United States, and was therefore removable . . . regardless of whether his burglary conviction was an aggravated felony." Opp. at 10. In other words, the Government argues that *Dimaya* does not show that Defendant was "not removable," because Defendant could have been deported on a ground other than Defendant's Nevada burglary. Therefore, the Government argues, the Court may not apply *Dimaya* retroactively.

However, under *Aguilera-Rios*, in deciding whether subsequent legal developments show that a person was "not removable," the question is not whether the person could have been removed on any conceivable ground, but whether the person was "removable *as charged*." *Id.* at 632–33 (emphasis added). As the Ninth Circuit has held in a similar context, "an alien is not deportable on a specific ground simply because the agency could deport him on those grounds, although it did not." *Alvarez-Santos v. INS*, 332 F.3d 1245, 1252 (9th Cir. 2003); *see also Briseno*, 192 F.3d at 1323 (holding that the fact that an alien is "potentially susceptible to being deported" does not establish that the defendant was "deportable").

The Ninth Circuit's decision in *United States v. Martinez*, 786 F.3d 1227 (9th Cir. 2015) is on point. In *Martinez*, the Ninth Circuit took subsequent legal developments into account when dismissing a defendant's indictment for illegal reentry on the ground that the defendant had erroneously been deported for committing an aggravated felony. *See id.* at 1229 ("Because recent developments in the law support Martinez's claim, we reverse the district court's denial of Martinez's motion to dismiss the indictment."). As discussed above, the Ninth Circuit did so despite acknowledging that, even if the defendant could not have been deported for committing an aggravated felony, the defendant could have been susceptible to deportation because the same conviction also qualified as "child abuse" under 8 U.S.C. § 1227(a)(2)(E)(i). The Ninth Circuit

---

the defendant's aggravated felony, but instead was based on defendant's being present in the United States without having been admitted or paroled. The aggravated felony merely played the secondary role of depriving the defendant of eligibility for discretionary relief.

found that this alternative ground of "child abuse" was irrelevant because "[t]he Notice to Appear in this case charged Martinez as removable only because he had committed an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(A)." *Martinez*, 786 F.3d at 1233 n.2. Because subsequent legal developments showed that Martinez had not committed an aggravated felony and therefore was not removable *as charged*, the Ninth Circuit held that it could apply those subsequent legal developments retroactively.

Similarly, in *United States v. Camacho-Lopez*, 450 F.3d 928 (9th Cir. 2006), the Ninth Circuit held that it could take subsequent legal developments into account because the developments showed that the crime of which the defendant had been convicted was not an aggravated felony, and the defendant's "Notice to Appear charged him as removable *only* for having committed an aggravated felony." *Id.* (emphasis in original). Because subsequent legal developments invalidated the only charged ground for the defendant's removal, the Ninth Circuit held, the defendant "was removed when he should not have been." *Id.* (emphasis added). In *Camacho-Lopez*, the Ninth Circuit also distinguished another case, *United States v. Pallares-Galan*, 359 F.3d 1088, 1094 (9th Cir. 2004), on the ground that "Pallares-Galan had additional convictions alleged in the original Notice to Appear, which also could have supported his removability." *Camacho-Lopez*, 450 F.3d at 928 n.1; *see also United States v. Maldonado-Melgoza*, 642 F. App'x 737, 738 (9th Cir. 2016) (holding, without discussing whether the defendant was susceptible to deportation on a ground other than the ground asserted in the Notice to Appear, that "[b]ecause *Dimaya v. Lynch* invalidated the basis for [the defendant's] removal order, we reverse his conviction [for illegal reentry]").

Therefore, considered along with cases such as *Martinez* and *Camacho-Lopez*, *Aguilera-Rios* cannot be read to hold that a court may take subsequent legal developments into account only when those subsequent legal developments show that there was no ground on which the alien *could possibly* have been deported. Instead, *Aguilera-Rios* stands for the proposition that a court may take legal developments into account if those developments invalidate the ground upon which the defendant *was* deported, as reflected in the Notice to Appear or the Notice of Intent. *See*

14

Case No. 15-CR-00114-LHK
ORDER GRANTING MOTION TO DISMISS INDICTMENT

*Aguilera-Rios*, 769 F.3d at 632 (considering subsequent precedent "in evaluating whether Aguilera was removable *as charged*") (emphasis added); *United States v. Dominguez*, 2013 WL 2237786, at *5 (C.D. Cal. May 20, 2013) ("[W]here the issue is eligibility for deportation, not eligibility for discretionary relief, Ninth Circuit law does not allow courts to consider [grounds for removal] not alleged in the underlying removal proceedings.").

Another court in the Ninth Circuit has also interpreted *Aguilera-Rios* this way. In *United States v. Tavizon-Ruiz*, 2016 WL 4072337 (N.D. Cal. July 25, 2016), the court held that *Aguilera-Rios* could not be interpreted to hold that subsequent legal developments "appl[y] retroactively to invalidate removal orders only for defendants otherwise legally entitled to be in the United States," because otherwise "an alien who is not lawfully in the country could be convicted and imprisoned for the crime of illegal re-entry even though the prior removals were made in error and the required element of a valid removal for a Section 1326 conviction does not exist." *Id.* at *2.

In summary, the Government concedes that the sole ground on which Defendant was charged with removal was his conviction for Nevada burglary, which the Government argues is an aggravated felony under § 1101(a)(43)(F). However, under *Dimaya*, Nevada burglary cannot be considered an aggravated felony. Thus, because *Dimaya* invalidates the sole ground charged in Defendant's removal proceedings, the Court may take *Dimaya* into account.

### ii. In Order to Apply the Law as it Existed in 2008, the Court Would Have to Conduct an Inquiry that the Ninth Circuit Has Held Is Unconstitutional

This conclusion, that the Court can apply *Dimaya* in deciding whether the determination that Defendant had committed a crime of violence was proper, is supported by the fact that at the time of Defendant's deportation, no court had held that Nevada burglary was a crime of violence. In the cases that the Government has cited in which courts have applied the law at the time of a defendant's deportation and not taken subsequent developments into account, the law at the time of the defendant's deportation was clear.

In *Vidal-Mendoza*, the Ninth Circuit noted that at the time of the defendant's deportation, there was "longstanding Ninth Circuit and BIA precedent" holding the defendant's argument was

15
Case No. 15-CR-00114-LHK
ORDER GRANTING MOTION TO DISMISS INDICTMENT

"unquestionably" incorrect. 705 F.3d at 1016. Similarly, in *United States v. Lopez-Velasquez*, 629 F.3d 894, 897 (9th Cir. 2010), the defendant conceded that at the time of his deportation, his argument was foreclosed by binding Ninth Circuit and BIA precedent. *Id.* at 897 ("Lopez-Velasquez does not actually claim that he was eligible for [the requested] relief under the applicable law at the time of his deportation hearing."). In other words, in *Vidal-Mendoza* and *Lopez-Velasquez*, there was nothing for the later court to do but to apply the unambiguous law that applied at the time of the earlier deportation.

In the instant case, on the other hand, the Government concedes that at time of Defendant's 2008 deportation, no court had decided whether Nevada burglary was a crime of violence under § 16(b). Thus, in order to apply the law as it existed in 2008, no binding precedent exists on which the Court can rely. Instead, the Ninth Circuit has held that in order to apply § 16(b) as it was interpreted in 2008, a court would have to decide what a "'usual or ordinary violation' of the [Nevada burglary] statute entails and then determine how great a risk of injury that 'ordinary case' presents." *Rodriguez-Castellon v. Holder*, 733 F.3d 847, 854 (9th Cir. 2013) (quoting *United States v. Ramos-Medina*, 706 F.3d 932, 938 (9th Cir. 2013)).

This is precisely the sort of inquiry that the United States Supreme Court in *Johnson* found void for vagueness. Specifically, the United States Supreme Court held that inquiring whether a crime "involves conduct that presents a serious potential risk of physical injury to another," violates the due process clause because it "denies fair notice to defendants" because of the "grave uncertainty about how to estimate the risk posed by a crime." *Johnson*, 135 S. Ct. at 2557–58. Similarly, in *Dimaya* the Ninth Circuit held that evaluating whether a crime "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," is unconstitutional because the inquiry is governed by "vague and uncertain standards" that "produce[] more unpredictability and arbitrariness than the Due Process Clause tolerates." *Dimaya*, 803 F.3d at 1120. As the United States Supreme Court held in *Johnson*, it is almost impossible to say "what kind of conduct the 'ordinary case' of a crime involves" or to decide what risk of physical force is posed by this "judge-imagined

abstraction." *Johnson*, 135 S. Ct. at 2557.

In other words, both the United States Supreme Court and the Ninth Circuit have held that the analysis that the Government asks the Court to perform in the instant case is impossible to do in a way that comports with due process. The Court has no binding precedent on which to rely in deciding whether Nevada burglary was a crime of violence in 2008, and to make that decision as a matter of first impression, the Court would have to use an unconstitutionally vague standard. This is a very different situation from the cases in which courts apply clear, binding precedent as it existed at a particular time in the past without taking into account subsequent legal developments.

In summary, in the instant case subsequent legal developments show that the ground on which Defendant was deported – that his Nevada burglary conviction constituted an aggravated felony – was invalid. Therefore, the Court finds that Nevada burglary cannot be considered an aggravated felony under § 1101(a)(43)(F), which incorporates § 16(b).

### iii. The Government's Request for a Stay

The Court also denies the Government's request for a stay "pending resolution of the issues in *Dimaya* by the [United States] Supreme Court, which granted certiorari in that case on September 29, 2016." Opp. at 10. The Ninth Circuit has held that "once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority." *Yong v. INS*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000). Thus, in these circumstances the Court finds that the fact "[t]hat the Supreme Court has granted certiorari in *Dimaya* does not relieve this Court of its obligation to follow Ninth Circuit precedent unless and until the Supreme Court overrules *Dimaya*." *See United States v. Bustos*, 2016 WL 6821853, at *4 (E.D. Cal. Nov. 17, 2016); *see also Alvarado v. United States*, 2016 WL 6302517, at *5 (C.D. Cal. Oct. 14, 2016) *(*denying a stay because "until the Supreme Court rules on these issues, the Court must follow the Ninth Circuit's precedent"). Therefore, the Court finds that a stay is not warranted and DENIES

the Government's request for a stay.[4]

B. **Collateral Attack Under § 1326(d)**

As discussed above, in order to mount a successful collateral attack on an earlier deportation, under 8 U.S.C. § 1326(d), Defendant must show that "(1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings 'improperly deprived [him] of the opportunity for judicial review'; and (3) the removal order was 'fundamentally unfair.'" *Raya-Vaca*, 771 F.3d at 1201 (quoting 8 U.S.C. § 1326(d)) (brackets in original).

The Government has conceded that if the Court finds that *Dimaya* applies and Defendant's conviction did not qualify as an aggravated felony, then the Defendant has met all three requirements of § 1326(d). Thus, because the Court finds that *Dimaya* applies and that Defendant's Nevada burglary conviction did not qualify as an aggravated felony, the Court finds that Defendant has mounted a successful collateral attack on his conviction. Thus, the 2008 deportation cannot serve as the predicate for a conviction under 8 U.S.C. § 1326, and therefore the indictment against Defendant fails as a matter of law.

IV. **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss the indictment for illegal reentry under 8 U.S.C. § 1326.

**IT IS SO ORDERED.**

Dated: December 2, 2016

LUCY H. KOH
United States District Judge

---

[4] In addition to the Ninth Circuit, four other circuits have also held that 18 U.S.C. § 16(b) is unconstitutionally vague. *See Baptiste v. Attorney Gen.*, 2016 WL 6595943, at *16 (3d Cir. Nov. 8, 2016); *Shuti v. Lynch*, 828 F.3d 440, 445 (6th Cir. 2016); *United States v. Vivas-Ceja*, 808 F.3d 719, 720 (7th Cir. 2015); *Golicov v. Lynch*, 837 F.3d 1065, 1068 (10th Cir. 2016). Only one circuit has disagreed. *United States v. Gonzalez–Longoria*, 831 F.3d 670, 672–74 (5th Cir. 2016). Furthermore, the United States Supreme Court only recently granted certiorari in *Dimaya*, and the case has not yet been scheduled for oral argument.